IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

VANESSA COLE                                                                                            PLAINTIFF

v.                                    NO. 4:16-cv-00131 PSH

CAROLYN W. COLVIN, Acting Commissioner                                          DEFENDANT
of the Social Security Administration

MEMORANDUM OPINION AND ORDER

Plaintiff Vanessa Cole ("Cole") commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Cole maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole.[1] Cole maintains that she has an affective disorder that meets or equals a listed impairment, and the ALJ erred at step three of sequential evaluation process when he failed to so find.

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011). This standard allows for the possibility of drawing two inconsistent conclusions and embodies a zone of choice within which the ALJ may decide to grant or deny benefits without being subject to reversal. See Culbertson v. Shalala, 30 F.3d 934 (8th Cir. 1994).

At step three, the ALJ must determine whether a claimant's impairment, when considered individually and in combination with his other impairments, meets or equals a listed impairment. See Raney v. Barnhart, 396 F.3d 1007 (8th Cir. 2005). The determination is a medical one, see Cockerham v. Sullivan, 895 F.2d 492 (8th Cir. 1990), and the claimant bears the burden of showing that his impairment meets or equals a listed impairment, see Pyland v. Apfel, 149 F.3d 873 (8th Cir. 1998).[2]

The Commissioner correctly notes that Cole has not alleged "which of the listings her impairments meet or equal" and has not cited "substantial medical evidence supporting her claim." See Document 9 at CM/ECF 4. The Commissioner maintains that the Court should dismiss Cole's complaint because "the Court need not consider a listing argument if [the claimant] provides no analysis of relevant law or facts. Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005) (court rejects "out of hand" conclusory assertion that claimant met or equaled listing with no analysis of the relevant law or facts)." See Document 9 at CM/ECF 4. Although the Court could dismiss this case "out of hand" because of the deficiencies in Cole's brief, out of abundance of caution the Court will consider her claim in light of what appears to be the most relevant listing, i.e., the affective disorders at Listing 12.04.

---

[2] In articulating the standard of review, Cole represents that "[u]nder the authority of the Social Security Act, the Social Security Administration has established a three-step sequential evaluation process to determine whether an individual under the age of 18 is disabled ..." See Document 8 at CM/ECF 3. Although the agency has established such a process, it is not applicable in this instance. Cole testified during the administrative hearing that she was born in October of 1971 and was forty-two years old on the day of the hearing, i.e., August 18, 2014. See Transcript at 95. She alleged that her disability began in January of 2010, or when she was thirty-eight years old. See Transcript at 76.

Listing 12.04 encompasses affective disorders. The required level of severity for Listing 12.04 is met when the requirements of paragraphs A and B of the listing are shown or the requirements of paragraph C of the listing are shown. Paragraph A requires proof of a depressive, manic, or bipolar syndrome. Paragraph B requires that the syndrome result in at least two of the following:

> (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.

Paragraph C of Listing 12.04 requires a showing of a syndrome of at least two years' duration that has caused more than a minimal limitation of the ability to do basic work activities and one of the following:

> (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

The evidence relevant to Listing 12.04 is not ample. Cole alleges that she became disabled in January of 2010, in part, because of an affective disorder, but the first medical report in the record is from a February of 2011 examination. See Transcript at 277-278. The report reflects that she did not complain of an affective disorder at that

time.

Cole did not seek medical attention for an affective disorder until March of 2012 when she presented to Professional Counseling Associates complaining of, <u>inter alia</u>, depression, anxiety, and abuse caused primarily by the difficulties in her marriage. <u>See</u> Transcript at 266-271. She reported no history of psychiatric illness or previous treatment, although she reported having heard voices in the past. A licensed psychological examiner diagnosed Cole with, <u>inter alia</u>, a major depressive disorder, single, severe without psychotic features; physical abuse of an adult; and a generalized anxiety disorder. The examiner assigned Cole a Global Assessment of Functioning ("GAF") score of forty-four. Cole returned to Professional Counseling Associates on what appear to have been four subsequent occasions. <u>See</u> Transcript at 261-262 (03/16/2012), 263-265 (03/27/2012), 259-260 (04/02/2012), 257-258 (04/24/2012). The progress notes reflect that she was prescribed medication to treat her depression and anxiety. By the date of her last visit, she reported that her mood had "greatly improved." <u>See</u> Transcript at 257.

In October of 2012, Cole was seen by Dr. John Faucett, Ph.D., ("Faucett") for a mental diagnostic evaluation. <u>See</u> Transcript at 294-301. Cole appeared agitated throughout the evaluation, and Faucett recorded the following information:

> ... She reports that "[t]here's stuff goin' on in my head." She reports sleep disturbances, indicating that she sleeps only four to five hours per night and has "trouble dealing with stuff." She become angry easily and will occasionally throw things at others and becomes physically violent when angry. She reports that she does not get along well with her husband. She reports that she has difficulty concentrating. She reports that she has a loss

of interest in most activities. She reports that she is generally able to get along with her five children and is able to care for them adequately.

See Transcript at 294. Cole reported that she last worked for six months in 2010 as a van driver for CDC Daycare but stopped working to begin college classes at Pulaski Technical College. Faucett observed, inter alia, that Cole's mood was depressed and anxious; her affect was labile; she cried frequently; her speech was logical, relevant, and goal directed; and her thought process was unremarkable. He diagnosed the following impairments:

> The claimant appears to be functioning above the level of Mental Retardation. She appears to meet the criteria for a diagnosis of Mood Disorder, Not Otherwise Specified vs. Malingering, Anxiety Disorder, Not Otherwise Specified vs. Malingering, and Polysubstance Dependence, Partial Sustained Remission. In addition, the claimant exhibits Borderline personality characteristics.

See Transcript at 298. He assigned her a GAF score of between fifty-five and sixty-five. He repeatedly noted, though, that she was not a "reliable reporter," and he questioned whether the results of the evaluation were a valid reflection of her intellectual functioning. See Transcript at 295, 296, 298, 300. With respect to the effects of Cole's affective disorder on her adaptive functioning, Faucett observed the following:

> 1. How do mental impairments interfere with this person's day-to-day adaptive functioning?
>
> The claimant reports that she is able to manage personal funds and perform most [activities of daily living] autonomously. She reports being able to cook meals, clean her bedroom and bathroom, wash her clothing, etc. She reports that she is able to drive at this time.

2. Capacity to communicate and interact in a socially adequate manner? The claimant reports a history of tumultuous personal relationships. She reports that she is easily angered and will become physically violent when angry. She reports that she is a very jealous person. The claimant appeared to be malingering throughout today's evaluation.

3. Capacity to communicate in an intelligible and effective manner?

The claimant was able to communicate in an intelligible and effective manner throughout today's evaluation.

4. Capacity to cope with the typical mental/cognitive demands of basic work-like tasks?

Although the claimant performed poorly on today's mental status evaluation, she indicates that she has a valid driver's license, and that she is able to manage personal finances without assistance. She reports that she is able to adequately care for herself and … three of her five children who are still living in her home. She reports that she has earned a GED and attended college classes at Pulaski Technical College. She worked for 10 years as a school bus driver and has worked in a variety of other jobs. Therefore, it is my opinion that she possesses the cognitive capacity to perform basic work-like tasks.

5. Ability to attend and sustain concentration on basic tasks?

The claimant was able to adequately attend to and sustain concentration on the tasks of the evaluation.

6. Capacity to sustain persistent in completing tasks?

The claimant demonstrated adequate capacity to sustain persistence in completing the evaluation tasks.

7. Capacity to complete work-like tasks within an acceptable timeframe?

The claimant did not display remarkable psychomotor slowing and was able to perform the evaluation tasks within an acceptable timeframe.

See Transcript at 299.

In November of 2012, Cole presented to the Baptist Health Medical Center Emergency Room complaining of mental health problems. See Transcript at 346-355. The attending medical professional characterized the problems as insomnia and a "flight of ideas," see Transcript at 347, but observed that Cole was alert, oriented times three, and "presented with a friendly disposition," see Transcript at 349. Cole was diagnosed with anxiety and given a short-time prescription for medication.

Cole sought medical attention on subsequent occasions at various medical facilities. See Transcript at 394-396 (12/12/2012), 386-392 (03/21/2013), 412-414 (04/15/2013), 416-436 (07/26/2013), 437-455 (08/20/2013), 457-496 (11/14/2013), 498-549 (12/14/2013), 557 (03/21/2014), 556 (04/03/2014), 551-555 (05/06/2014), 560-578 (05/09/2014), 580-609 (07/19/2014), 611 (07/18/2014), 610 (09/24/2014). The progress notes from those examinations make little mention of any symptoms associated with affective disorders, although Cole did complain of depression and expressed suicidal thoughts on occasion, see Transcript at 501, and was diagnosed with an anxiety disorder and suicidal ideations at other times, see Transcript at 458, 499.

Cole testified during the administrative hearing. See Transcript at 95-106. She testified that she did not graduate from high school but obtained a GED. She attended Pulaski Technical College for one year. She reported her last meaningful work to have been in 2009 but acknowledged working some in 2011 as a bus driver. She sometimes hears voices and "see[s] stuff." See Transcript at 101. She takes prescription medication

for her anxiety and has been seeking mental health counseling.

The ALJ found at step two that Cole's severe impairments include depression. At step three, the ALJ found that Cole's affective disorder does not meet or equal Listing 12.04. With respect to paragraph B of Listing 12.04, the ALJ credited Faucett's opinions and found the following:

> In activities of daily living, the claimant has mild restrictions. The claimant reported very limited activities of daily living. However, she reported to Dr. Faucett she was able to manage personal funds and perform most activities of daily living autonomously. She also reported she was able to cook meals, clean her bedroom and bathroom, wash her clothes and drive.
>
> In social functioning, the claimant has moderate difficulties. The claimant reported she prefers to be left alone. Dr. Faucett noted she reported a history of tumultuous personal relationships, was easily angered and would become physically violent when angry. She further reported she was a very jealous person. However, Dr. Faucett noted the claimant appeared to be malingering through the evaluation and was able to communicate in an intelligible and effect manner.
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. Once again, the claimant reported significant difficulties in this area. However, Dr. Faucett found the claimant possessed the cognitive capacity to perform basic work-like tasks, though she performed poorly on the mental status evaluation. He further reported the claimant was able to adequately attend to and sustain concentration on the tasks of the evaluation and could sustain persistence in completing the evaluation tasks. Further, Dr. Faucett reported the claimant did not display any remarkable psychomotor slowing and was able to perform the evaluation tasks within an acceptable timeframe.
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.
>
> Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes

>of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

See Transcript at 84.

With respect to paragraph C of Listing 12.04, the ALJ credited Faucett's opinions and found that the evidence failed to establish the presence of the paragraph C criteria. The ALJ gave little weight to Cole's GAF scores, noting that the scores are not a "reliable measure of functional ability as GAF scores reveal only a picture in time and do not necessarily correlate with disability." See Transcript at 85. The ALJ then assessed Cole's residual functional capacity and found that she can perform work at all exertional levels but with the following non-exertional limitations: "based on a diagnosis of depression, interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables, little judgment, and supervision required is simple, direct, and concrete." See Transcript at 79. The ALJ found at step four that Cole has no past relevant work but found at step five that there is work a hypothetical individual with Cole's residual functional capacity can perform. On the basis of those findings, the ALJ concluded that Cole was not disabled for purposes of the Social Security Act at any time since she filed her application for supplemental security income payments.

The record reflects, and the ALJ properly found, that Cole has repeatedly been diagnosed with an affective disorder, usually identified as depression but on occasion identified as anxiety. The ALJ found, though, that the affective disorder does not meet or equal all of the specified medical criteria for paragraphs B or C of Listing 12.04.

Substantial evidence on the record as a whole supports the ALJ's finding for a number of reasons.

Cole's affective disorder does not satisfy the requirements of paragraph B of Listing 12.04 for four reasons. First, the ALJ could find that Cole has only mild restrictions of activities of daily living. Cole is able to manage her personal funds and perform most activities of daily living autonomously. For instance, she can cook meals, clean her bedroom and bathroom, and tend to her personal care. She is also able to drive an automobile. It is true she represented in her disability documents that she does nothing during a typical day and even noted that her hobbies include "watching [her] plants grow." See Transcript at 212. There is no evidence, though, that such an extreme limitation in her activities of daily living is caused by an affective disorder. The limitation is likely caused by other factors.

Second, the ALJ could find that Cole has only moderate difficulties in maintaining social functioning. It is true that Faucett noted Cole prefers to be left alone, has a history of tumultuous personal relationships, is easily angered, and can become violent. Faucett observed, though, that Cole was not a reliable reporter and was likely malingering. The record reflects that Cole is married and has been for a number of years, although her marriage has not been ideal. She lives in a home with, and spends time with, her three teenage children, and she attends church.

Third, the ALJ could rely upon Faucett's opinions and find that Cole has only moderate difficulties in maintaining concentration, persistence, or pace. Faucett was of

the opinion that Cole possessed the cognitive capacity to perform basic work-like tasks, although she performed poorly on the testing he administered. Faucett was also of the opinion that Cole was able to adequately attend to and sustain concentration on tasks and could sustain persistence in completing the evaluation tasks. Faucett reported Cole did not display any remarkable psychomotor slowing and was able to perform the evaluation tasks within an acceptable timeframe.

Fourth, there is no evidence Cole's affective disorder has caused her to experience episodes of decompensation, which have been of an extended duration. Although she has undoubtedly experienced periods when the symptoms associated with her depression and/or anxiety temporarily worsened, they appear to have been caused by situational factors and were not for an extended duration.

Cole's affective disorder also does not satisfy the requirements of paragraph C of Listing 12.04. Specifically, there is no medical evidence her depression and/or anxiety causes more than a minimal limitation of her ability to do basic work activities. Any limitation of her ability to do such activities is likely caused by other factors.

Cole faults the ALJ for failing to give greater consideration to the GAF scores. The ALJ did not err in that regard. A GAF score, by its very nature, is imprecise and is simply a "subjective determination that represents the clinician's judgment of the individual's overall level of functioning." See Jones v. Astrue, 619 F.3d 963, 973 (8th Cir. 2010) [internal quotation omitted]. Assuming Cole's GAF scores can be a reliable measure of her functional ability, they are inconclusive. In March of 2012, her GAF score was

estimated to be forty-four; by October of that year, it was estimated to be as high as sixty-five.

Cole also faults the ALJ for giving too much weight to Cole's ability to do light housework with assistance. There is no merit to Cole's assertion. The ALJ did not accord too much weight to Cole's ability to do light housework with assistance. That factor was just one of the factors the ALJ considered in making his decision.

On the basis of the foregoing, the Court finds that there is substantial evidence on the record as a whole to support the ALJ's findings. Accordingly, Cole's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 22nd day of September, 2016.

_____
UNITED STATES MAGISTRATE JUDGE